**Jung-Nam YANG and Seung-Han Yang, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 77–1615.**

United States Court of Appeals, Third Circuit.

Argued Jan. 13, 1978.

Decided March 23, 1978.

Edwin R. Rubin, Wasserman, Orlow, Ginsberg & Rubin, Philadelphia, Pa., for petitioners.

Philip Wilens, Chief, Government Regulations and Labor Section, Crim. Div., James P. Morris, Atty., Dept. of Justice, Wash-

ington, D. C., Chester J. Halicki, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before ADAMS and WEIS, Circuit Judges, and COOLAHAN, Senior District Judge.*

## OPINION OF THE COURT

COOLAHAN, Senior District Judge.

Jung-Nam Yang and her husband, Seung-Han Yang, petition for review of an order of the Board of Immigration Appeals (herein "the Board") dismissing their appeal from an order of an Immigration Judge finding them deportable under the Immigration and Nationality Act § 241(a)(2), 8 U.S.C. § 1251 (Supp.1977).[1] Petitioners, both natives and citizens of Korea, entered the United States as non-immigrant visitors for pleasure in February and March 1974, with authorizations to remain until no later than May 1974. About a year later, on April 29, 1975, a prospective employer for Mrs. Yang applied for a labor certification for her as a live-in domestic. After the certification was approved, a petition was filed on August 14, 1975, with the Immigration and Naturalization Service (herein "INS") to accord Mrs. Yang an unskilled-labor Sixth Preference visa status under 8 U.S.C. § 1153(a)(6) (1970), as amended (Supp.1977).[2] The visa petition was not approved until some 20 months later, on April 4, 1977. However, during the interim the INS issued orders to show cause, and on June 10, 1976, a deportation hearing was held before an Immigration Judge and the Yangs were found deportable.

Petitioners argue, and the INS concedes, that the Yangs would not have been subject to deportation proceedings if an application for adjustment of status to resident alien had been filed and was being processed before the order to show cause was issued.[3] Petitioners contend that because of INS misconduct, petitioners missed an opportunity to file their application during several months prior to the deportation hearing when visas were available for Korean natives in the Sixth Preference category. Because the total number of visas available to Korean natives is allocated in order of preference categories, visas for applicants in the Sixth Preference are available only if demand in the higher categories has been satisfied and the quota has not been exhausted.[4] According to quota eligibility

---

* James A. Coolahan, United States Senior District Judge for the District of New Jersey, sitting by designation.

1. Jurisdiction over the challenge by petitioners to the order of deportation is vested in the Court by 8 U.S.C. § 1105a (1970) as an appeal from a "final order of deportation," rendered pursuant to deportation proceedings under 8 U.S.C. § 1252(b) (1970). See Mendoza v. Immigration & Naturalization Serv., No. 76-2530 (3d Cir. Dec. 1, 1977).

2. Aliens subject to numerical limitations may qualify for a preferred status on the basis of their ability to perform labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States. The Sixth Preference—so named because of five prior preferences for relatives of United States citizens and resident aliens and for certain members of the professions, arts, or sciences—requires a certification from the Secretary of Labor that a labor shortage exists and that employment of such aliens would not be detrimental to American workers. 8 U.S.C. § 1182 (Supp.1977).

3. Aliens who enter the United States lawfully under a nonresident status, such as visitors for pleasure or business, may have their status adjusted to permanent residents if the statutory requirements of eligibility are satisfied and the discretion of the Attorney General is exercised in favor of adjustment. 8 U.S.C. § 1255 (Supp.1977). Because the statute requires that an immigrant visa be immediately available to the alien at the time the application is filed, aliens from countries subject to a quota must normally demonstrate that they are entitled to a preference under the quota. See n. 2, supra. See generally, 2 C. Gordon & H. Rosenfield, Immigration Law & Procedure, § 7.7 (1977, Supp. Nov. 1977). For discussion of the practice of suspending deportation proceedings pending processing of the application, see generally, 1 id. § 5.8e (1977, Supp. Nov. 1977).

4. The number of immigrant visas that may be issued to aliens born in countries in the Eastern Hemisphere is limited to an annual quota of 170,000. 8 U.S.C. § 1151 (Supp.1977). In addition, an annual limitation of 20,000 is placed upon the total number of immigrant visas and certain other entry permits which may be is-

lists maintained by the State Department for use by the INS,[5] visas for Korean natives in the Sixth Preference category became available shortly before the deportation hearing in February, March, and April 1976. (P.Br.Ex. B.) However, at that time petitioners erroneously believed that under the INS regulations [6] an application for adjustment of status could not be filed until a visa petition was approved. As their petition had not been approved, they consequently believed that they were not eligible to apply for adjustment of status during those months prior to the deportation hearing when visas were available in their preference category.

Apparently the INS itself has recognized that many INS offices were not aware that simultaneous filings were permissible. On appeal, petitioners produced two INS memoranda dated June 27 and July 18, 1977, which state that, because numerous applicants were improperly discouraged or misled by incomplete information from filing applications for adjustments prior to approval of their visa petitions, remedial filings would be allowed in certain instances.[7]

---

sued to natives of any single country. 8 U.S.C. § 1152(a) (Supp.1977); *see* 1 C. Gordon & H. Rosenfield, *Immigration Law & Procedure* § 2.26c at 2–188 (1977). This limitation has been exhausted by Korean applications in recent years. *Id.* at 2–189 n. 29. In general, visas are allocated according to the priority of preference categories set forth in 8 U.S.C. § 1153 (Supp.1977). *See also* n. 2, *supra.* However, if a country exhausts its maximum annual allocation of 20,000, its allocation for the following year is controlled by a special provision which in effect reduces the number of visas available to the higher preference categories. *See* 8 U.S.C. § 1152(e) (Supp.1977); 1 C. Gordon & H. Rosenfield, *Immigration Law & Procedure* § 2.28c (1977).

5. *See* 8 CFR § 245.1(g) (1977).

6. The pertinent regulation, 8 C.F.R. § 245.-2(a)(2) (1977), *amending* 8 C.F.R. § 245.2(a)(2) (1976), was not a model of clarity in 1976, nor is its import readily grasped in its current amended version.

In 1976 the regulation provided:

"(2) *Filing application.* Before an application for adjustment of status under section 245 of the Act may be considered properly filed, a visa must be immediately available. If a visa would be immediately available only upon approval of a visa petition, the application will not be considered properly filed unless such petition has first been approved. If a visa petition is submitted simultaneously with the adjustment application, the adjustment application shall be retained and processed only if the petition is found to be in order for approval upon initial review by an immigration officer, is approved, and approval makes a visa immediately available. . . ."

In the current regulation, the third sentence of the section has been modified:

"If a visa petition is submitted simultaneously with the adjustment application, the adjustment application shall be retained for processing only if approval of the petition

when reached for adjudication would make a visa immediately available at the time of filing of the adjustment application. If such petition is subsequently approved, the date of filing the adjustment application shall be deemed the date on which the accompanying petition was filed."

Apparently the regulation permitted simultaneous filing of visa petitions and adjustment applications both in 1976 and after its amendment but was not generally so understood by applicants and even by INS officials. *See* n. 7, *infra.* Petitioners also contend that the INS Operations Instruction for the regulation specifically provided for simultaneous filings but were not published at the time of the deportation proceedings. (P.Br.Ex. C.)

7. The memorandum of June 27, 1977, to the Regional Commissioners states:

"It has been reported that some Service offices have discouraged or prevented whenever possible the simultaneous filing of visa petitions with applications for adjustment of status. Service regulations have provided for simultaneous filing both prior to and since January 1, 1977.

Prior to its amendment, effective January 1, 1977, 8 CFR 245.2(a)(2) provided for the retention of Form I–485 if the visa petition was found approvable upon initial review. Presently, it provides for the retention of Form I–485 until the petition is adjudicated if approval would make a visa immediately available at the time of filing of the application.

Since January 1, 1977 aliens, except immediate relatives, who accept or continue in unauthorized employment, are statutorily ineligible for adjustment of status. It appears, therefore, that the Service's failure to completely permit eligible aliens to file applications and petitions concurrently has resulted in the deprivation of benefits to which they would have been entitled if they had so filed.

Therefore, in the case of an alien who is seeking to apply or has applied for adjust-

At oral argument, counsel for the INS indicated that the Yangs' case would not be within the scope of the new policy because the record did not show deliberate Government misconduct. The INS took this position notwithstanding the provision in the memorandum of June 27, 1977, granting relief to aliens who were erroneously advised or given incomplete information.

Whether the INS policy evidenced by the memoranda will apply to the Yangs is important to them now not only because it may allow them to file their application, but also because it may ameliorate the detrimental effect of a change in the statutory requirements for adjustment of status. At oral argument petitioners' counsel informed the Court that Sixth Preference visa numbers had become available in January 1978 for the first time since the deportation hearing in June 1976 and that an application would be submitted. While petitioners now have an approved visa petition and visa numbers are available, the statute, 8 U.S.C. § 1255(c) (Supp.1977), was amended, effective January 1, 1977, to preclude adjustment of status of any alien otherwise eligible who accepts or continues in unauthorized employment prior to filing

an application for adjustment. It is possible, therefore, that without the benefit of the new INS policy, petitioners may now be ineligible for adjustment of status because of Mrs. Yang's employment prior to petitioners having filed an application for adjustment. However, if the INS policy applies to petitioners, they would not be considered statutorily ineligible because permission to accept employment would be considered as having been granted *nunc pro tunc* as of the date of filing of the visa petition.[8]

■ Petitioners argue that whether or not the INS chooses to accord them relief under its remedial policy, they are entitled to relief in the form of an estoppel because of INS misconduct, the same misconduct, they argue, that is recognized in the INS memoranda. Had the Yangs known from the regulations or been advised when they obtained the application that simultaneous filing was permitted, they could have filed their application prior to the deportation hearing during the months when visa numbers were available, and this suit would not have arisen. It is a salutary principle that a reviewing court should look with disfavor upon actions by a federal agency in viola-

ment of status, and who establishes that he was either erroneously advised or given incomplete information resulting in refusal or rejection of an I–485 prior to January 1, 1977, his application shall be processed and he shall not be considered to be statutorily ineligible because of unauthorized employment. Such an alien shall be considered as having been granted permission to accept employment nunc pro tunc as of the date that the petition was filed in his behalf.

Please direct the District Directors under your jurisdiction to prepare a written decision in such a case for submission through your office for consideration for publication as a precedent." [P. Reply Br.Ex. D.]

The memorandum of July 18, 1977, a telegraphic message to all regions, states:

"Because of numerous allegations that Service offices last January and before improperly discouraged and refused the filing of adjustment applications submitted simultaneously with visa petitions, the following instruction is issued effective immediately, and regulations will be amended to reflect them: on or before December 30, 1977, an alien may file an adjustment application and have

it adjudicated under the law and regulations as they existed on January 9, 1977 provided that the alien has been in the United States since prior to January 10, 1977, is the beneficiary of a visa petition filed before that date which has been or will be approved, and could under 8 CFR 245.2(a)(2) have properly filed an application for adjustment with that visa petition. Any alien so filing an application for adjustment may be deemed to have authorization to accept employment as of the date the visa petition was filed." [P. Reply Br.Ex. E.]

At oral argument counsel for petitioners stated that an application was not filed prior to December 30, 1977, as required by the July memorandum, because he had been advised by counsel for the INS that the deportation proceeding would not be reopened to receive it. As filing of the application appeared to be a nugatory act, petitioners' counsel did not believe it reasonable to put petitioners to the expense and considerable effort required to file.

8. *See* n. 7, *supra*.

tion of its own regulations. *See Mendez v. Immigration & Naturalization Serv.*, 563 F.2d 956 (9th Cir. 1977). On the other hand, estoppel requires proof of affirmative misconduct on the part of the Government, *Immigration & Naturalization Serv. v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973), a burden not easily met. *Compare Santiago v. Immigration & Naturalization Serv.*, 526 F.2d 488 (9th Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976) (failure to inform of immigration requirements insufficient), *with Yoo v. Immigration & Naturalization Serv.*, 534 F.2d 1325 (9th Cir. 1976) (delay in determining visa eligibility sufficient). However, it is not appropriate for the Court to decide the estoppel issue at this time.

█ The context of petitioners' claim for an estoppel is markedly different from that which existed at the time the Board affirmed the order of deportation. Many of the facts which would be significant in deciding petitioners' claim of estoppel developed subsequent to the appeal to the Board. The INS memoranda, which admit that simultaneous filing was permitted under the regulations but not always in practice, has put petitioners' failure to file an application in an altogether different light. While petitioners now have an approved visa petition for which visa numbers are currently available, the effect of the statutory prohibition on unauthorized employment has not been considered. Although it appears that petitioners may well be within the INS policy as expressed in the memoranda, the agency has 'not formally and fully considered petitioners' case.[9]

Under the circumstances, petitioners' alternative request for relief, a motion to remand to the Board, is appropriate and will be granted insofar as it requests that the Board be instructed to reopen the proceedings. We do not decide at this time whether petitioners are entitled, under estoppel principles, to be relieved of their failure to file the application prior to the deportation hearing or whether the application can be granted despite the statutory work prohibition. INS regulations provide that a party may request that the Board reopen or reconsider any case when material evidence was not available and could not have been discovered or presented at the former hearing. 8 C.F.R. § 3.2 (1977). The Board should be accorded an opportunity to consider the several material changes in fact and law that have been noted, and in particular whether the INS remedial filing policy applies in petitioners' case. Should the Board, after considering petitioners' application, decide that they are not entitled to file or have an adjustment of status, petitioners may then institute a new appeal.

In accordance with the foregoing, the matter will be remanded to the Board with instructions to reopen the proceedings in order to permit petitioners to request that the new INS policy relating to the filing of petitions for adjustment of status be applied in the case at hand.

---

9. It may be necessary to determine, for example, the circumstances under which petitioners obtained the application and whether they were misinformed or misled by INS officials at that time or subsequently.