

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-24-2003

# Ali-Bocas v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket 02-2518

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Ali-Bocas v. Atty Gen USA" (2003). *2003 Decisions.* Paper 626.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/626

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 02-2518

DENYSE VASHANTI ALI-BOCAS; ANTONIA ALI-BOCAS;
LEEANDRA ALI-BOCAS,

Petitioners

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent

Petition for review of an Order of the
Immigration and Naturalization Service
(Case No. A 74-993-712)

Submitted Under Third Circuit LAR 34.1(a)
on April 3, 2003

Before: MCKEE, SMITH, <u>Circuit Judges</u>,
and HOCHBERG, <u>District Judge</u>*

(Filed: April 24, 2003 )

OPINION OF THE COURT

_____

* Hon. Faith Hochberg, United States District Court for the District of New Jersey, sitting
by designation.

SMITH, Circuit Judge

I.

Petitioner Denyse Vashanti Alibocas seeks review of a May 7, 2002 final order of removal by the Board of Immigration Appeals (hereinafter "BIA" or "Board"), affirming an immigration judge's decision finding removability, and denying asylum and withholding of deportation. The BIA also affirmed the denial of Alibocas's application for adjustment of status under Section 245 of the Immigration and Nationality Act (hereinafter "INA"), 8 U.S.C. § 1255 (2000). We will affirm the BIA's decision.

II.

Petitioner Alibocas is a native and citizen of Trinidad. She arrived in the United States in October 1989 with her husband, Martinez Alibocas, and their two children. The Alibocas family entered the United States as nonimmigrant visitors with authorization to remain for a temporary period not to exceed six months.

Alibocas and her husband began working with Reverend Edwards, pastor of a Pentecostal church in Philadelphia. Alibocas served as the director of the school affiliated with the church, and her husband was an assistant pastor. Alibocas's husband filed a religious worker immigrant petition with the INS. The INS approved the immigrant petition, but Alibocas's husband died before his application for adjustment of

status was adjudicated by the INS.[1] Alibocas withdrew her application for adjustment of status after her husband died.

The Pentecostal church then filed a religious worker immigrant petition on behalf of Alibocas, pursuant to Section 203(b)(4) of the INA, 8 U.S.C. § 1153(b)(4) (1994). The INS denied the petition, and Alibocas appealed to the INS's Administrative Appeals Unit (hereinafter "AAU"). On October 26, 1998, the AAU dismissed the appeal because Alibocas's duties with the church did not require any specific religious training, and therefore did not constitute a qualifying religious vocation or occupation for purposes of approval of an immigration petition for a religious worker.[2]

Meanwhile, the INS undertook removal proceedings against Alibocas, serving her a Notice of Appear in removal proceedings on July 1, 1997. The Notice charged Alibocas with removability for having remained in the United States for a time longer than permitted. She appeared before an immigration judge, admitted the factual allegations in the Notice, conceded removability, and was granted voluntary departure for sixty days.

---

[1] Alibocas stated that her husband filed for religious worker status on or about March 16, 1990, and that the INS lost the file until 1993. As part of her appeal to the BIA, she filed an affidavit stating that her husband filed a second application in 1995 because the INS had not acted on the first application in a timely manner. Upon her husband's death, the family withdrew their applications for adjustment of status that had been based on the husband's religious immigrant worker petition, and reapplied based on Alibocas's own employment. INS files indicate that Alibocas's husband filed a petition for religious worker special immigrant status on May 30, 1996, which was approved on September 23, 1996 and revoked on May 5, 1997, following his death on December 2, 1996.

[2] Alibocas does not challenge the AAU decision with respect to her religious worker immigrant position.

On May 7, 2002, the BIA affirmed the immigration judge's decision and dismissed the appeal.

## III.

The BIA had jurisdiction pursuant to 8 C.F.R. §§ 3.1(b)(3) and 240.15 (2001), which grants the BIA appellate jurisdiction over decisions of immigration judges in removal proceedings. We have jurisdiction under Section 242(a) of the INA, 8 U.S.C. § 1252(a) (2000).

## IV.

We generally afford deference to decisions of administrative agencies when we are reviewing the agency's interpretation of a statute the agency is charged with administering. *See Patel v. Ashcroft*, 294 F.3d 465, 467 (3d Cir. 2002) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).

## V.

A.     The BIA properly held that Alibocas was ineligible for adjustment of status

Before the BIA, Alibocas argued that had the INS not mismanaged her husband's file, he would have been granted status as a lawful permanent resident prior to his sudden death. As a result, Alibocas claims that she then would have been able to adjust her status and would not have had to undergo removal proceedings. While noting that "there are sympathetic circumstances in this case," the BIA determined that the immigration judge did not have *nunc pro tunc* authority to approve the adjustment of status application of

4

Petitioner's deceased husband. We agree, despite what are indeed "sympathetic circumstances." The INS correctly asserts that the Attorney General's authority to review the denial of employment-based visa petitions or petitions relating to special immigrants, such as Alibocas's husband's petition, has been delegated to the AAU. 8 C.F.R. § 204.5(n)(2) provides that "the denial of a petition for classification under § 203(b)(1) [through] (b)(4) of the Act (as it relates to special immigrants under section 101(a)(27)(C) of the Act) shall be appealable to the Associate Commissioner for Examinations." *See also Matter of Aurelio*, 19 I & N Dec. 458, 460 (BIA 1987) (Proceedings in which visa petitions are adjudicated are separate from exclusion and deportation proceedings, such that immigration judges have no authority to decide visa petitions. The BIA lacks jurisdiction in visa petition proceedings to consider the district director's decision to revoke a visa petition following the death of the petitioner.).

With respect to Alibocas's own application for adjustment of status, we agree with the BIA that she is not eligible for adjustment of status pursuant to 8 U.S.C. § 1255(a). Section 1255(a), which governs "[a]djustment of status of nonimmigrant to that of person admitted for permanent residence," provides that adjustment of status is a discretionary benefit which requires that the alien: (1) make an application for adjustment of status; (2) be eligible to receive an immigrant visa and be admissible to the United States for permanent residence; and (3) show that an immigrant visa is immediately available to her at the time the application is filed. 8 U.S.C. § 1255(a). Since Alibocas's own application

5

for religious worker immigrant status was denied, and the AAU dismissed her appeal, her application for adjustment of status was derivative of her husband's. Her husband, however, was ineligible for adjustment of status because he died prior to his adjustment of status interview and final agency action. Alibocas's application for adjustment of status was conditioned upon INS approval of her husband's application pursuant to 8 U.S.C. § 1101(a)(27)(c), and therefore cannot succeed because she was not eligible for an immigrant visa.[3]

Alibocas's argument that both she and her deceased husband are entitled to *nunc*

---

[3] 8 U.S.C. § 1101(a)(27)(C), provides, in relevant part:
   (27) The term "special immigrant" means –
        (C) an immigrant, and the immigrant's spouse and children if accompanying or following to join the immigrant, who –
            (i) for at least two years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States;
            (ii) seeks to enter the United States –
                (I) solely for the purpose of carrying on the vocation of a minister of that religious denomination,
                (II) before October 1, 2003 in order to work for the organization at the request of the organization in a professional capacity in a religious vocation or occupation, or
                (III) before October 1, 2003, in order to work for the organization . . . at the request of the organization in a religious vocation or occupation; and
            (iii) has been carrying on such vocation, professional work, or other work continuously for at least the 2-year period described in clause (i).
8 U.S.C. § 1101(a)(27)(C) (1994).

6

*pro tunc* relief because only a ministerial action was required to finalize her husband's adjustment of status also must fail. Grants of adjustment in status are discretionary in nature. 8 U.S.C. § 1255. In addition, aliens who have accepted unauthorized employment, including religious workers who have worked without authorization for more than 180 days, are ineligible for adjustment of status. *See* 8 U.S.C. § 1255(c)(2); *Matter of Bennett*, 19 I & N Dec. 21 (BIA 1984) (Alien admitted to the United States as a nonimmigrant visitor, who worked for a church without the permission of the INS found to be deportable even though he later qualified as a special immigrant minister and intended to work for the same church). Since both Alibocas and her husband worked without INS authorization for the Pentecostal church since their entry into the United States in 1989, it is quite possible that such unauthorized employment might have barred Alibocas's husband from adjustment of status under 8 U.S.C. § 1255(c)(2).

B.    The BIA properly declined to apply equitable estoppel against the INS, with respect to Alibocas's deceased husband's adjustment of status application

Interpreting Alibocas's appeal as one of equitable estoppel, the BIA stated that "[e]ssentially, she is requesting this Board (1) to adjust her husband's status as of 1990 and (2) to then grant her (and her children) immigrant status under former section 102(a)(27)(D)(ii) of the Act as aliens 'accompanying or following to join' the principal alien." A.R. 3. The BIA correctly determined that "this Board and Immigration Judges are without authority to apply the doctrine of equitable estoppel against the Service so as to preclude it from taking a lawful course of action that it is empowered to pursue by

7

statute and regulation." A.R. 3; *See Matter of Hernandez-Puente*, 20 I & N, Dec. 335 (BIA 1991) (determining that BIA has no jurisdiction to review a decision to deny adjustment of status, or to review a failure to act on an application for adjustment of status). Consequently, the BIA properly determined that it did not have jurisdiction to remedy a failure of the INS to act on the adjustment application of Petitioner's husband.

        C.     Alibocas has failed to meet the requirements for equitable estoppel

The Supreme Court has never upheld equitable estoppel against the government, but has mentioned the possibility that, in the right case, some type of "affirmative misconduct" on the part of the government, combined with the traditional elements of equitable estoppel, might warrant estoppel against the government. *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 421 (1990); *see also Yang v. INS*, 574 F.2d 171, 175 (3d Cir. 1978) (stating that estoppel requires proof of affirmative misconduct on the part of the government but declining to decide whether estoppel is appropriate in that case). In order to recover based on traditional principles of equitable estoppel, Alibocas must prove: (1) a misrepresentation by the INS; (2) on which she reasonably relied; (3) to her detriment. *U.S. v. Asmar*, 827 F.2d 907 (3d Cir. 1987). Here, Alibocas complains that she reasonably relied on INS assertions that, after having lost her husband's file for three years, the INS would find it and act on it efficiently. We are not prepared to find reasonable reliance because Alibocas voluntarily withdrew her husband's application. Because Alibocas has not satisfied the traditional elements of

8

equitable estoppel, we need not address the issue of whether there was affirmative misconduct on the part of the government.

VI.   CONCLUSION

For the foregoing reasons, the order of the Board of Immigration Appeals will be affirmed.


TO THE CLERK:


Please file the foregoing Opinion.


D. Brooks Smith
Circuit Judge