## UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent-Appellant,

v.

## Marciano Haw HIBI, Petitioner-Appellee.

No. 72–1562.

United States Court of Appeals, Ninth Circuit.

Feb. 8, 1973.

Joseph Sureck, Regional Counsel (argued), I & NS, San Pedro, Cal., Stephen M. Suffin, I & NS, San Francisco, Cal., James L. Browning, Jr., U. S. Atty., William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., Richard Kleindienst, Acting Atty. Gen., Dept. of Justice, Washington, D. C., for respondent-appellant.

Donald L. Ungar (argued), Milton T. Simmons, of Phelan, Simmons & Ungar, San Francisco, Cal., for petitioner-appellee.

Before BARNES and TRASK, Circuit Judges, and EAST,* District Judge.

TRASK, Circuit Judge:

This is an appeal from an order granting the petition for naturalization of Marciano Haw Hibi, a Philippine native, over the recommendation of the Naturalization Examiner of the Immigration and Naturalization Service that the petition be denied. The basis for the petition was Hibi's service in the Armed Forces of the United States during its war with Japan.

The issues on appeal involve the discretion, if any, invested in the Commissioner of Immigration and Naturalization and the Attorney General under section 705 of the Naturalization Act of 1940. Also, whether the Immigration Service failed in its duty to carry into effect the purposes of section 702 of the Act, and thus should be estopped from asserting delay in filing as a basis on which to reject this petition for naturalization.

Hibi, the petitioner, entered the United States on April 25, 1964, as a temporary business visitor. On September 13, 1967, he petitioned for naturalization under sections 701–705 of the Nationality Act of 1940,[1] based upon his military

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

1. Pertinent portions of Sections 701, 702 and 705 of the Act are as follows:
"Sec. 701. . . . [A]ny person not a citizen regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and who shall have been at the time of his enlistment or induction a resident thereof and who (a) was lawfully admitted into the United States, including its Territories and possessions, or (b) *having entered the United States, including its Territories and possessions, prior to September 1, 1943, being unable to establish lawful admission into the United States serves honorably in such forces beyond the continental limits of the United States or has so served, may be naturalized upon compliance with all the requirements of the naturalization laws except that* (1) no declaration of

service in the Armed Forces of the United States. The Naturalization Examiner found the petitioner to be ineligible under sections 701 and 702 of the Nationality Act of 1940.

The district court ordered that the petition be granted, finding the petitioner eligible under section 702 of the 1940 Act. The issue there, as here, concerned the timing of the filing of the petition, since it was filed long after the expiration of section 702 (December 31, 1946), and subsequent to the enactment of section 310(e) of the present Immigration and Nationality Act which precludes the naturalization of anyone except in accordance with present requirements.[2]

Section 702 was a measure which offered American citizenship to non-citizens serving in the Armed Forces of the United States overseas during World War II who, by reason of their overseas service, were not free to appear before a regular naturalization court in the United States. The district court expressly found that the petitioner had never been advised of his right to be naturalized while he was on active duty with the United States Army, the only time during which he could have qualified under section 702, and that he would have applied had he known of the opportunity and were the means available for him to apply. The trial court concluded that the Immigration Service failed in its duty to effectuate the provisions of section 702, and thus deprived the petitioner of a fair opportunity to apply for naturalization. Acting on principles of equity, the trial court held that the government should be estopped from alleging that the filing deadline in section 701 has passed or that 8 U.S.C. § 1421(e) precludes this petition, and that therefore, the petitioner should not be barred from citizenship by the late filing of this petition. We agree.

Petitioner, a native of the Philippines, enlisted in the United States Army, Philippine Scouts, in 1941. The Scouts were always a part of the Army of the United States, as contrasted with the army of the Commonwealth of the Philippines, a much larger group organized by and under the control of the Philip-

intention, no certificate of arrival for those described in group (b) hereof, and no period of residence within the United States or any State shall be required; (2) the petition for naturalization may be filed in any court having naturalization jurisdiction regardless of the residence of the petitioner; (3) the petitioner shall not be required to speak the English language, sign his petition in his own handwriting, or meet any educational test; . . ."

"Sec. 702. *During the present war, any person entitled to naturalization under section 701 of this Act, who while serving honorably in the military . . . forces of the United States is not within the jurisdiction of any court authorized to naturalize aliens, may be naturalized in accordance with all the applicable provisions of section 701 without appearing before a naturalization court.* The petition for naturalization of any petitioner under this section shall be made and sworn to before, and filed with, a representative of the Immigration and Naturalization Service designated by the Commissioner or a Deputy Commissioner, which designated representative is hereby authorized to receive such petition in behalf of the Service, to conduct hearings thereon, to take testimony concerning any matter touching or in any way affecting the admissibility of any such petitioner for naturalization, to call witnesses, to administer oaths, including the oath of the petitioner and his witnesses to the petition for naturalization and the oath of renunciation and allegiance prescribed by section 335 of this Act, and to grant naturalization, and to issue certificates of citizenship: . . ."

"Sec. 705. The Commissioner, with the approval of the Attorney General, shall prescribe and furnish such forms, and shall make such rules and regulations, *as may be necessary to carry into effect the provisions* of this Act." (Emphasis supplied)

2. Section 310(e) of the present Immigration & Nationality Act, 8 U.S.C. § 1421(e) provides:

"Notwithstanding the provisions of section 405(a), any petition for naturalization filed on or after September 21, 1961, shall be heard and determined in accordance with the requirements of this subchapter."

pine Government. The Scouts were dispersed during the Japanese occupation of the islands, but when the United States Army returned, petitioner rejoined and served until his discharge on December 6, 1945. After spending some time at his mother's home in the outlying provinces, petitioner alleges that he first learned that he had missed any naturalization opportunity when he returned to Manila late in 1946 or early 1947. A letter of inquiry to the American Embassy produced a mimeographed answer informing him only that the quota on those born in the Philippines was heavily oversubscribed.

Due to the Japanese occupation of the island, naturalization under section 702 had been delayed until 1945. Following resolution of eligibility questions in early 1945, authorization was sent to an American vice-consul to commence naturalization proceedings. The Commissioner of Immigration, in a letter of September 13, 1945, indicated that this authority had not yet been exercised. Additionally, he noted political considerations that some officials of the Philippine Government were voicing in making objections to Filipino naturalizations. He suggested to the Attorney General that the situation might best be handled by revoking the authority of the then Naturalization Examiner and "omitting to designate" any successor. The result of this of course, was to render section 702 completely ineffective. Subsequently, revocation of authority was sent, and naturalizations ceased October 27, 1945. A naturalization examiner was later sent to the Philippines, in August of 1946, about a year after the war had ended and some eight months after petitioner's discharge. This decision appears to have had some basis in the Service's conclusion that members of the Philippine Commonwealth Army

were no longer eligible for naturalization under section 702. The determination did not affect the much smaller number of Philippine Scouts, and many Scouts who had re-enlisted or who were still on active duty were then naturalized.

Petitioner alleges that at no time prior to his discharge was he ever made aware of his eligibility for naturalization under section 702. The Army had a regulation requiring that notice be given aliens, at the time of their induction or enlistment, of their rights to apply for naturalization, and requiring a notation to that effect in the alien's service record. Petitioner had enlisted before this regulation took effect; it is not clear whether this notice was required to have been given when he rejoined the Army upon its return to the islands in 1945. It is not disputed that at no time were notices posted on his unit's bulletin board, application forms distributed, announcements made to his unit, nor were any notations made in his service record to indicate that petitioner had been told about the law.[3]

Section 705 was not discretionary but imposed a legal duty upon the Commissioner of Immigration to make the benefits of sections 701 and 702 available to all qualified applicants. The duty to this petitioner was to make a representative available to naturalize non-citizen applicants while they were still serving in the armed forces. As the district court found, by revoking the authority of the only representative who could have naturalized the petitioner while he was still in the army, the Service failed in its duty to carry into effect the purposes of section 702, and thus denied petitioner of a fair opportunity to apply for naturalization during the only time he could apply.

---

3. The War Department issued Circular No. 382, September 21, 1944, relating to procedures for naturalization, which instructed:

"Commanding officers of all echelons will designate an appropriate individual, properly instructed, to inform non-citizens of their right to apply for citizenship, to assist such persons who desire to make application, and to expedite by all possible means completing action on the application."

The government argues that a broad amount of discretion was invested in officials to effect the implementation of this Act. We have been cited to no statutory language, nor can we find any ourselves, that gave either the Attorney General or the Commissioner of Immigration the authority to revoke, on his own initiative, the authority of the only person designated to perform naturalizations in the Philippines. We thus reject the government's contention that an official of the executive branch could unilaterally nullify this Act of Congress.

We agree with the district court that the government should be estopped from alleging, as to this applicant, that the filing deadline set forth in section 701 has passed, or that denial of the petition is required by section 310(e) of the present Immigration and Nationality Act. The petition should be granted.

This court has not hesitated to invoke equitable relief to permit one to obtain his rights of citizenship where those rights have been denied due to erroneous action on the part of administrative officials. Thus in Tejeda v. United States Immigration & Naturalization Service, 346 F.2d 389 (9th Cir. 1965), the plaintiff contended he had been a permanent resident but was denied re-entry because of misadvice of the American Consul. The court remanded for findings as to these asserted facts saying:

"If the properly developed factual findings reveal that petitioner made a bona fide effort to re-enter in 1947 or 1948 and failed to obtain reentry due to the misadvice of the American Consul, the respondents should be precluded from denying petitioner what was rightly his—reentry as a non-quota immigrant in 1947 or 1948 under 22 U. S.C. § 1281." Tejeda v. United States Immigration & Naturalization Service, *supra*, at 394.

*See also,* Hetzer v. Immigration & Naturalization Service, 420 F.2d 357 (9th Cir. 1970).

The record shows that procedures were set up to notify noncitizens in a position similar to that of the petitioner of their right to apply for naturalization. The record shows further that these procedures were not effectively carried out, at least for this petitioner. This lack of notification was clearly prejudicial. Even if he had been notified, however, because of the conduct of certain officials, petitioner would probably have been denied the opportunity to apply for naturalization. Because the conduct of these officials was in derogation of their duty to carry out an Act of Congress, and because petitioner has been prejudiced by this conduct, the appellant is not entitled to immunity from equitable estoppel in this case. *See* Gestuvo v. District Director, Immigration & Naturalization Service, 337 F.Supp. 1093 (C.D.Cal. 1971).

The judgment of the district court is affirmed.