# UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE *v.* HIBI

No. 72–1652.   Decided October 23, 1973

PER CURIAM.

Respondent filed his petition for naturalization in the United States District Court for the Northern District of California on September 13, 1967.   The District Court granted the petition, rejecting the negative recommendation of the naturalization examiner appointed by the Attorney General pursuant to § 335 of the Immigration and Nationality Act, 66 Stat. 255, 8 U. S. C. § 1446.   The Court of Appeals affirmed, 475 F. 2d 7 (CA9 1973), holding that even though the deadline fixed by Congress for the filing of applications such as respondent's had expired more than 20 years earlier, petitioner was "estopped" from relying on this fact.

Respondent was born in Manila in 1917, and in February 1941 enlisted in the Philippine Scouts, a unit that was part of the United States Army.   He was captured by the Japanese Armed Forces and released after six months' internment.   In April 1945 after the liberation of the Philippines by Allied Forces, he rejoined the Scouts

6

and served until his discharge in December 1945.

Sections 701 and 702 of the Nationality Act of 1940, as amended, provided for the naturalization of non-citizens who served honorably in the Armed Forces of the United States during World War II.* Section 701

---

*Sections 701, 702, and 705 of the Nationality Act of 1940, added by the Second War Powers Act, 1942, 56 Stat. 182, as amended, 8 U. S. C. §§ 1001, 1002, 1005 (1940 ed., Supp. V), provided in pertinent part:

Sec. 701. "[A]ny person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and [w]ho shall have been at the time of his enlistment or induction a resident thereof and who (a) was lawfully admitted into the United States, including its Territories and possessions, or (b) having entered the United States, including its Territories and possessions, prior to September 1, 1943, being unable to establish lawful admission into the United States serves honorably in such forces beyond the continental limits of the United States or has so served may be naturalized upon compliance with all the requirements of the naturalization laws except that (1) no declaration of intention, no certificate of arrival for those described in group (b) hereof, and no period of residence within the United States or any State shall be required; (2) the petition for naturalization may be filed in any court having naturalization jurisdiction regardless of the residence of the petitioner; (3) the petitioner shall not be required to speak the English language, sign his petition in his own handwriting, or meet any educational test; . . . *Provided, however,* That . . . (3) the petition shall be filed not later than December 31, 1946. . . ."

Sec. 702. "During the present war, any person entitled to naturalization under section 701 of this Act, who while serving honorably in the military . . . forces of the United States is not within the jurisdiction of any court authorized to naturalize aliens, may be naturalized in accordance with all the applicable provisions of section 701 without appearing before a naturalization court. The petition for naturalization of any petitioner under this section shall be made and sworn to before, and filed with, a representative of the Immigration and Naturalization Service designated by the Commissioner or a Deputy Commissioner, which designated representative is hereby authorized to receive such petition in behalf of the Service, to conduct hearings thereon, to take testimony concerning any matter

exempted certain alien servicemen who served outside the continental limits of the United States from some of the usual requirements for naturalization, including those of a period of residence in the United States and literacy in English. An amendment to this section specified that all petitions filed under it had to be filed no later than December 31, 1946. Section 702 provided for the overseas naturalization of persons eligible for naturalization under § 701 who were not within the jurisdiction of any court authorized to naturalize aliens; naturalization under § 702 could take place only during active service in the Armed Forces. Section 705 authorized the Commissioner of Immigration and Naturalization, with the approval of the Attorney General, to make such rules and regulations as were necessary to carry into effect the provisions of the Act.

Respondent entered the United States for the first and only time on April 25, 1964, more than 17 years after the expiration of the time limit established by Congress for claiming naturalization under the "exemptions of the Act." He entered on a visitor-for-business visa, which expired on June 30, 1964. His subsequent petition for naturalization was based on the assertion that the Government was estopped from relying on the statutory time limit which Congress had attached to the provisions under which he claimed. The estoppel was said to arise from petitioner's failure to advise him, during the time he was

touching or in any way affecting the admissibility of any such petitioner for naturalization, to call witnesses, to administer oaths, including the oath of the petitioner and his witnesses to the petition for naturalization and the oath of renunciation and allegiance prescribed by section 335 of this Act, and to grant naturalization, and to issue certificates of citizenship . . . ."

Sec. 705. "The Commissioner, with the approval of the Attorney General, shall prescribe and furnish such forms, and shall make such rules and regulations, as may be necessary to carry into effect the provisions of this Act."

eligible, of his right to apply for naturalization, and from petitioner's failure to provide a naturalization representative in the Philippines during all of the time respondent and those in his class were eligible for naturalization. The District Court adopted respondent's contention, and its conclusions were upheld by the Court of Appeals.

It is well settled that the Government is not in a position identical to that of a private litigant with respect to its enforcement of laws enacted by Congress.

> "As a general rule laches or neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest. . . . A suit by the United States to enforce and maintain its policy respecting lands which it holds in trust for all the people stands upon a different plane in this and some other respects from the ordinary private suit to regain the title to real property or to remove a cloud from it." *Utah Power & Light Co.* v. *United States,* 243 U. S. 389, 409 (1917).

Here the petitioner has been charged by Congress with administering an Act which both made available benefits of naturalization to persons in respondent's class and established a cutoff date for the claiming of such benefits. Petitioner, in enforcing the cutoff date established by Congress, as well as in recognizing claims for the benefits conferred by the Act, is enforcing the public policy established by Congress.

While the issue of whether "affirmative misconduct" on the part of the Government might estop it from denying citizenship was left open in *Montana* v. *Kennedy,* 366 U. S. 308, 314, 315 (1961), no conduct of the sort there adverted to was involved here. We do not think that the failure to fully publicize the rights which Congress ac-

corded under the Act of 1940, or the failure to have stationed in the Philippine Islands during all of the time those rights were available an authorized naturalization representative, can give rise to an estoppel against the Government.

Respondent's effort to claim naturalization under a statute which by its terms had expired more than 20 years before he filed his lawsuit must therefore fail. The petition for certiorari is granted and the judgment of the Court of Appeals is reversed.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL concur, dissenting.

The Court today summarily reverses the decision of the Court of Appeals, which found that the Government was estopped from denying citizenship to respondent under the Nationality Act of 1940.[1] The Court reasons that estoppel is not even arguably applicable because there was no "affirmative misconduct" on the part of the United States; it implies that there were merely failures to "fully publicize" the rights given by the Act and "to have stationed in the Philippine Islands during all of the time those rights were available an authorized naturalization representative." Failures of this kind could, perhaps, be excused if caused by the exigencies of war as long as good-faith efforts to carry out the provisions of the Act had been made.

But the Court ignores the record and the decisions below when it speaks only of these failures. In 1942, Congress amended the Nationality Act of 1940 to extend the benefits of citizenship to individuals who had fought in the Armed Forces of the United States during World War II, authorizing the appointment of naturalization

---

[1] C. 876, 54 Stat. 1137.

officers to confer these benefits on noncitizens outside the jurisdiction of a naturalization court.[2] Between 1943 and 1946, these officers traveled from post to post, through England, Iceland, North Africa, and the islands of the Pacific, naturalizing thousands of foreign nationals pursuant to the mandate of Congress.

The story in the Philippines was different. After the Japanese occupation of the Philippines ended, an American vice-consul was authorized to commence naturalization proceedings in 1945. Almost immediately thereafter, the Philippine Government expressed its concern about

---

[2] As amended, Act of Mar. 27, 1942, c. 199, § 1001, which added §§ 701–705 to the 1940 Act, 56 Stat. 182, the Nationality Act waived certain normal requirements for naturalization, such as residency in the United States and literacy in English for noncitizens who had served in the United States Armed Forces. *Id.*, § 701. Section 702 of the amended Act provided that aliens could claim these benefits even when, like respondent, they were outside the jurisdiction of a naturalization court, but only so long as they were in active service in the Armed Forces; this section also explicitly authorized the designation of naturalization officers to effectuate its purposes:

"During the present war, any person entitled to naturalization under section 701 of this Act, who while serving honorably in the military or naval forces of the United States is not within the jurisdiction of any court authorized to naturalize aliens, may be naturalized in accordance with all the applicable provisions of section 701 without appearing before a naturalization court. The petition for naturalization of any petitioner under this section shall be made and sworn to before, and filed with, a representative of the Immigration and Naturalization Service designated by the Commissioner or a Deputy Commissioner, which designated representative is hereby authorized to receive such petition in behalf of the Service, to conduct hearings thereon, to take testimony concerning any matter touching or in any way affecting the admissibility of any such petitioner for naturalization, to call witnesses, to administer oaths, including the oath of the petitioner and his witnesses to the petition for naturalization and the oath of renunciation and allegiance prescribed by section 335 of this Act, and to grant naturalization, and to issue certificates of citizenship . . . ." *Id.*, § 702.

Filipino men leaving the Territory after being granted American citizenship. In response to these concerns, the Commissioner of Immigration, on September 13, 1945, wrote a letter to the Attorney General recommending that the "situation . . . be handled by revoking the authority previously granted [the vice-consul] and by omitting to designate any representative authorized to confer citizenship in the Philippine Islands. . . ." The Commisioner's recommendation was approved by the Attorney General on September 26, 1945, and the authority of the vice-consul to naturalize alien servicemen immediately revoked.

Because of this action, there was no authorized naturalization representative in the Philippines. The District Court found as a fact that respondent, had he known about his right to be naturalized while he was in the Armed Forces and had means been available, would have applied for naturalization. Instead, with no means available, respondent was discharged from the Armed Forces in December 1945, thereby losing his right to claim citizenship under § 702 of the 1940 Act.[3]

The Court's opinion ignores the deliberate—and successful—effort on the part of agents of the Executive Branch to frustrate the congressional purpose and to deny substantive rights to Filipinos such as respondent by administrative fiat, indicating instead that there was no affirmative misconduct involved in this case.

The record does not support that conclusion. I would grant certiorari and put the case down for oral argument.

---

[3] See n. 2, *supra*. It was not until August 1946, eight months after respondent's discharge, that a naturalization agent was reappointed for the Philippines and a good-faith effort made to naturalize Filipinos under § 702 of the Act. In four months, 4,000 Filipinos took advantage of the opportunity.