**UNITED STATES of America, Respondent-Appellant,**

v.

**Andres Bonifacio PASION, Petitioner-Appellee.**

**No. 75–1083.**

United States Court of Appeals, Ninth Circuit.

Oct. 17, 1975.

---

Lawrence Walton Chamblee, Atty. (argued), Crim. Div., Dept. of Justice, Washington, D. C., for respondent-appellant.

Elmer E. Poston (argued), Honolulu, Hawaii, for petitioner-appellee.

## OPINION

Before KOELSCH, ELY and WALLACE, Circuit Judges.

KOELSCH, Circuit Judge:

The matter is here on the appeal of the United States of America from the order of the United States District Court granting the petition of Andres Bonifacio Pasion for naturalization. We must reverse.

Appellee is a native and citizen of the Philippines. He served in the Philippine Scouts, a unit of the United States Armed Services, from 1945 to 1949; his service and discharge were honorable. He has been in the United States since 1972 on a visitor's visa which has long since expired, making efforts to be naturalized.

The parties agree that appellee's petition must be judged by the standards of 8 U.S.C. § 1440, the provision presently regulating the naturalization of aliens on the basis of active duty service in the armed forces of the United States. That section provides for the summary naturalization of an alien who served in the armed forces before December 31, 1946, if " . . . (2) at any time subsequent to enlistment or induction such person shall have been lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1440(a)(2).

Appellee acknowledges that he has never been admitted for permanent residence under the administrative procedures now in force for that purpose, or under any predecessor procedures; however, he contends that he has cleared the obstacle of admission for permanent residence because of § 2 of the Act of August 16, 1940, 54 Stat. 788, which reads:

"Hereafter, service in the Regular Army honorably terminated shall be credited for purposes of legal residence under the naturalization laws of the United States, regardless of the legality or illegality of the original entry into the United States of the alien, the certificate of the honorable termination of such service or a duly authenticated copy thereof made by a naturalization examiner of the Immigration and Naturalization Service ·being accepted in lieu of the certificate from the Department of Labor of the alien's arrival in the United States required by the naturalization laws; and service so credited in each case shall be considered as having been performed

immediately preceding the filing of the petition for naturalization."

In appellee's view, his certificate of honorable termination is acceptable in lieu of evidence of lawful admission and confers upon him an "admitted to permanent residence" status. Because § 1440 provides that any period of service is sufficient for naturalization, he would thus meet all present requirements.

Assuming *arguendo* that § 2 can be so construed, *but see* 8 U.S.C. § 1101(20), and further assuming (despite the government's rather persuasive contentions to the contrary): (1) that § 2 was intended to apply to Filipinos; (2) that it was intended to apply after June 30, 1943;[1] and (3) that it was not repealed by implication by the inconsistent provisions codified in the Nationality Act of 1940 and its subsequent amendments,[2] we must nevertheless conclude that appellee's petition should have been denied.

Section 2 of the Act of August 16, 1940, was expressly repealed by Section 403(a)(41) of the Immigration and Nationality Act of 1952. A savings clause to that statute, § 405(a) (presently codified as a note to 8 U.S.C. § 1101), provided in part: "Nothing contained in this Act . . . shall be construed to affect the validity of any . . . status, condition, [or] right in process of acquisition . . . existing . . . at the time this Act shall take effect . . . ." Appellee maintains that Section 2 conferred upon him a status of a person legally admitted to permanent residence during his service which expressly survived repeal of the section. Again, we will assume that to be the case.

However, the final obstacle in appellee's path, the Act of September 26, 1961, 75 Stat. 650, 8 U.S.C. § 1421(e), is insurmountable. It provides:

"(e) Notwithstanding the provisions of section 405(a), any petition for naturalization filed on or after September 26, 1961, shall be heard and determined in accordance with the requirements of this subchapter."

The statute is not ambiguous. It requires petitions for naturalization to be determined by reference to the standards currently in effect, without circumvention by application of the savings provision of § 405(a). As appellant has never been admitted for permanent residence, and as his arguably implied status survives only by operation of § 405(a), we are clear that § 1421(e) forecloses reliance on that implied status to meet the requirements of 8 U.S.C. § 1440.

Moreover, even if § 1421(e) were ambiguous, reference to the legislative history of the section makes clear that Congress intended to foreclose the eclectic appellee here attempts, and to impose uniform burdens upon contemporaneous petitions for naturalization. The House Judiciary Committee's Report on the bill explains:

"Section 17 [*i.e.*, 8 U.S.C. § 1421(e)] amends section 310 of the Immigration

---

1. The government argues that § 2 of the Act must br read in connection with § 1 of the Act, which was expressly inapplicable to Filipinio servicemen, and which extended an earlier bill only through 1943. The government reasons that the provisions of § 2 were intended only to implement § 1, which was essentially a stop-gap measure to hasten naturalization of alien servicemen, a step made necessary by a congressional policy of limiting appropriations to the payment of citizens, ameliorated by a concomitant policy of allowing naturalization of aliens already in service. *See* Act of July 1, 1937, 50 Stat. 446; Act of August 19, 1937, 50 Stat. 696.

2. *See* Title III of the Nationality Act of 1940, added by the Second War Powers Act, Act of March 27, 1942, 56 Stat. 182, as amended. *See* Section 324, Nationality Act of 1940, 54 Stat. 1137; Amended by Act of July 2, 1946, 60 Stat. 416. *See* Section 324A of the Nationality Act of 1940, Act of June 1, 1948, 62 Stat. 281; Amended by Act of June 30, 1950, 64 Stat. 316. Under the statutory provisions directly governing naturalization of Filipino servicemen, the petition for naturalization was required to be filed by December 31, 1946. The position taken here would effectively undermine the congressional scheme set out in the various statutes above, as well as the Supreme Court's recent decision in *United States v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973), construing the intent of those statutes.

and Nationality Act [of 1952] so as to require all petitions for naturalization filed after the enactment of this section to be heard and determined in accordance with the requirements of that act.

"The purpose of this amendment is to overcome interpretations placed upon the savings clause (sec. 405) of the Immigration and Nationality Act (*United States v. Menasche*, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955); *United States v. Wolff*, 270 F.2d 422, 3 Cir., cert. den. 362 U.S. 928 (1960); *Medalion v. United States*, 279 F.2d 162, 2 Cir. (1960) ), holding in effect, that residence in the United States before December 24, 1952, was sufficient to confer naturalization rights under the Nationality Act of 1940, as amended, notwithstanding its repeal on that date by the Immigration and Nationality Act. As a consequence, petitioners of this class are being considered eligible, 9 years after its repeal, for naturalization under the 1940 law, and, if more favorable to the circumstances in their cases, they may elect to claim the benefits of the Immigration and Nationality Act. This, notwithstanding the fact that the petition for naturalization was not filed until after December 24, 1952, when the Immigration and Nationality Act became effective.

"In the opinion of the committee, such interpretations are contrary to the intent of Congress clearly indicated in the basic Immigration and Nationality Act. The administration of two nationality laws simultaneously is cumbersome, inefficient, and unfair to other applicants for naturalization. In accordance with the original purpose of the Immigration and Nationality Act, this clarifying amendment will make it amply apparent that from and after its enactment the requirements and provisions of the Immigration and Nationality Act will be uniform and will apply to all petitioners for naturalization. The Department of Justice endorses this amendment in its report of July 7, 1961, on a similar provision contained in H.R. 6300."

The congressional intent revealed with respect to the *Menasche line of cases—to prevent a hybrid application of two Nationality Acts long after the repeal of the earlier Act, in a manner which allows circumvention of the more stringent requirements of the later Act—is fully applicable to the "status" relied on here.*

Were appellee's position accepted, it would render the present requirement of admission to legal residence status contained in § 1440 a nullity with respect to all alien servicemen who served before 1952, because that requirement would be satisfied through operation of § 2, thus entitling such servicemen to summary naturalization solely upon a period of service of any length. As Congress, in adopting § 1440 in 1952, expressly applied the "lawful admission to permanent residence" requirement to World War II alien servicemen, it is apparent that Congress thought § 2 was inapplicable to render the admission requirement a nullity. Thus, while we have assumed *arguendo* that § 2 of the Act of August 16, 1940, was not repealed by implication by the various inconsistent provisions of later Acts, particularly those treated in *United States v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973), *see* n.2 *supra*, and that a status acquired prior to 1952 might have survived express repeal of § 2 until 1961 because of § 405(a) of the 1952 Act, we very much doubt that to be the case.

Reversed.