**In the Matter of the Petition for Naturalization of, Bernabe KAPILI, Petitioner.**

**In the Matter of the Petition for Naturalization of, Godofredo Ventura BENEDICTO, Petitioner.**

United States District Court,
E. D. New York.

June 26, 1979.

Abelardo P. Sulit, Long Beach, N. Y., for petitioner Kapili.

Brothers, Brothers & Walker, New York City, for petitioner Benedicto.

John Viaggio, Supervisory Atty., Brooklyn, N. Y., for Immigration and Naturalization Service.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Petitioners, Filipinos who are presently in the United States as "visitors", have applied for naturalization pursuant to Sections 701–705 of the Nationality Act of 1940, ch. 199, 56 Stat. 182 *et seq.*, as amended, 8 U.S.C. §§ 1001–1005 (1940 ed. Supp. V). They claim that, having served honorably in the United States armed forces during the Second World War by service in the Commonwealth Army of the Philippines, they are entitled to naturalization despite the expiration of the law on which their eligibility was founded. The Designated Naturalization Examiner of the Immigration and Naturalization Service ("INS") of the Department of Justice, *see* 8 U.S.C. § 1446(b), has recommended that the court · deny the petitions. The court has jurisdiction pursuant to 8 U.S.C. § 1421(a).

The historical background of this matter has been thoroughly reviewed in *Matter of Naturalization of 68 Filipino War Vets*, 406 F.Supp. 931 (N.D.Cal.1975). Briefly stated, Sections 701 and 702 of the Nationality Act of 1940, as amended, provided for the naturalization of non-citizens who served honorably in the armed forces of the United States during World War II. Section 701 exempted certain alien servicemen who served outside the continental limits of the United States from some of the usual requirements for naturalization, including those of a period of residence in the United States and literacy in English. As amended by subsequent acts of Congress, it was ultimately specified that all petitions under Section 701 had to be filed no later than December 31, 1946. Section 702 provided for the overseas naturalization of persons eligible under Section 701 who were not within the jurisdiction of any court authorized to naturalize aliens. Naturalization ·under Section 702 could take place only during active service in the armed forces. Section 705 directed the Commissioner of Immigration and Naturalization, with the approval of the Attorney General, to make such rules and regulations as were neces-

sary to carry into effect the provisions of the Act.

Pursuant to the Act, officers of the INS were sent to overseas military posts to effect the naturalization of eligible members of the United States armed forces. After the liberation of the Philippines from Japanese occupation, the INS in August of 1945 designated an officer to naturalize aliens pursuant to Section 702. However, at the request of the Philippine government, his authority was revoked in late October 1945 and another officer was not appointed until August 1946. Thus, Filipinos eligible for naturalization under Section 702 were denied the opportunity to take advantage of the Act for approximately nine months.

In *INS v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973), the Supreme Court held that the Government was not estopped from relying on the December 31, 1946 expiration date of Sections 701–705 to deny a petition for naturalization filed more than twenty years later. The Court said that the Government's failure fully to publicize the rights accorded under the Act and the failure to station an INS representative in the Philippines during the entire time those rights were available did not amount to the type of "affirmative misconduct" necessary to work an estoppel against the Government.

However, in *Matter of Naturalization of 68 Filipino War Vets, supra*, the court held that one group of petitioners had presented evidence of affirmative misconduct by the Government. While serving in the American armed forces prior to December 31, 1946, they actually filed applications or wrote asking how to become naturalized, and the INS returned their applications or stated that no purpose would be served by applying. The court held this was sufficient to estop the Government from relying on the expiration date of Sections 701–705 as a ground for denying their petitions, which would be considered to have been "constructively filed" pursuant to the statutory requirements. The court also found that a second group of petitioners, who did not take any timely steps to be naturalized

while serving in the American armed forces, were denied due process of law by the failure of the INS to make naturalization under Section 702 available to them when it was available to other servicemen similarly situated around the world.

This court deems the reasoning of that opinion to be persuasive as to the first group. Accordingly, in one case brought on May 25, 1979, this court granted the petition of Eufracio Narciso Laxamana, Petition No. 856758, on the recommendation of the Designated Naturalization Examiner.

With respect to the second group this court agrees that due process required that Filipinos be treated in the same way as other non-citizens serving elsewhere in United States armed forces. However, there is no basis for affording relief on the ground of a denial of due process in the absence of some showing that petitioners while in the armed forces intended to become citizens, that they attempted to ascertain the procedures for doing so, and that, they were in fact prejudiced in their efforts to become citizens by the absence of an authorized naturalization agent for the approximately nine month period. Accordingly, pursuant to 8 U.S.C. § 1447(a), (b), the court will hold an evidentiary hearing on those issues.

The parties are requested to call chambers to arrange a date for the hearing. So ordered.