Petition for Naturalization of
Antonio OLEGARIO.

Petition No. 2270–864562.

United States District Court,
S. D. New York.

June 27, 1979.

Seth G. Roberts, New York City, for Immigration and Naturalization Service.

Steven A. Elias, New York City, for petitioner.

### MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Petitioner filed a petition for naturalization under §§ 701–705 of the Nationality Act of 1940 on December 28, 1978. His petition was denied by the Immigration and Naturalization Service (INS). For reasons that follow, we conclude he is eligible for citizenship and grant the petition.

Petitioner, currently a "visitor" in the United States, is a Filipino National who— as the government concedes—served honorably in the Army of the Commonwealth of the Philippines and Filipino Scouts from December 20, 1941 to December 2, 1945. As such, he would have been entitled to be naturalized under §§ 701–705 had he filed his petition on or before December 31, 1946. However—as petitioner concedes—he neither filed a timely petition nor made any attempt to do so.

The situation which confronted the petitioner in 1946, and the various contentions of the respective parties as to the impact of that situation upon petitioner's present legal status, are fully described and set forth in Judge Renfrew's penetrating and exhaustive opinion in *Matter of Naturalization of 68 Filipino War Veterans* (N.D.Cal. 1975) 406 F.Supp. 931. In brief, the Congress had in 1942 enacted legislation conferring upon aliens who served in the armed forces of the United States (which by definition included the Army of the Commonwealth of the Philippines) certain special methods of obtaining United States citizenship provided they filed petitions for such citizenship prior to December 31, 1946. The statute directed appropriate agencies of the Executive Branch to provide the machinery to implement these rights. This worked fine everywhere but in the Philippines. The Executive carried out the Congressional mandate and—everywhere but the Phil-

**186**

ippines—aliens in large numbers became citizens pursuant to the machinery provided. In the Philippines, however, a peculiar political problem erupted. After the statute had been in operation in the Philippines for about a month,[1] it became apparent that many Filipino servicemen were taking advantage of its provisions and officials of the newly independent Philippine government became apprehensive that there would be an undue drain on Filipino manpower. The Executive Branch of the American government—without consulting the Congress—met this situation on September 26, 1945 by simply withdrawing the authority of its consular officials within the Philippines to process applications for citizenship, thus quieting the fears of Filipino officials, but defying the Congress by making it impossible for persons in petitioner's position to receive the benefits that it had provided for them.

Judge Renfrew did not like this result. Dealing with a group of petitions of Filipino veterans who had subsequently migrated to the United States and then filed for citizenship, he divided them into two categories.[2] "Category I" included those who despite the consular official's lack of authority to act had either gone through the form of presenting appropriate petitions prior to December 31, 1946, or had taken other affirmative action amounting to constructive filing. "Category II" consisted of those who as Filipino War Veterans were

entitled to the benefits of §§ 701–705 but who had made no efforts toward obtaining citizenship during the critical period.

As to Category I Judge Renfrew—despite some rather inhospitable language in the Supreme Court decision of *INS v. Hibi* (1973) 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7—ruled that the Executive Branch was estopped by its own obviously lawless conduct from denying that petitions had been timely filed.

With respect to Category II Judge Renfrew—upon a careful equal protection analysis—decided that those petitioners had been denied due process of law in a manner which could only be remedied by now admitting them to citizenship. The government duly appealed from Judge Renfrew's decision but, with the advent of a new Administration, withdrew its appeal.

As we understand the government's position, it does not now seriously contest Judge Renfrew's Category I, but despite its decision to withdraw its appeal, vigorously challenges Category II.

We agree with the government that petitioner has not succeeded in putting himself in Category I.[3] However, he is conceded to be a member of Category II, and as to that category we adopt as our own Judge Renfrew's able opinion.[4] Accordingly the petition is granted.[5]

SO ORDERED.

---

1. Implementation of the Act could not commence until August of 1945 after the liberation of the Philippines.

2. Judge Renfrew's opinion also contains a third category—which does not here concern us—of persons claiming to be veterans but unable satisfactorily to establish such status.

3. He testified that the failure of four of his friends to succeed in filing petitions discouraged him from taking any action. This hardly establishes constructive filing.

4. We find no merit in the Immigration Examiner's finding that § 310(e) of the Immigration Act as amended in 1961 bars this position. There is no indication in the legislative history that Congress in enacting § 310(e) was addressing itself to the situation of those Filipino War Veterans such as petitioner who in 1946 had

been unable to exercise their rights under §§ 701–705.

5. In January of this year Judge Renfrew granted 17 additional naturalization petitions for the reasons stated in his 1975 opinion. However, advised of the government's desire to challenge those reasons before the Court of Appeals (despite the withdrawal of its earlier appeal) Judge Renfrew deferred the administration of the oath to the 1979 petitioners until the Court of Appeals should have had an opportunity to review his grant of their petitions. We shall follow the same course and defer the administration of the oath until the expiration of the government's time to appeal to the Court of Appeals or until the final disposition of any appeal that may be taken.