In the Matter of the Petition of Mario Valderrama LITONJUA.

No. 23358.

United States District Court, S. D. California.

April 9, 1981.

2. The Plan, which accompanied the Notice of Hearing has already been provided to all parties in interest.

Robert A. Mautino, Baxley, Mautino & Ray, San Diego, Cal., for petitioner.

Joseph M. Ragusa, San Diego, Cal., for the Immigration and Naturalization Service.

## MEMORANDUM DECISION AND ORDER

GORDON THOMPSON, Jr., District Judge.

Petitioner is a native and citizen of the Philippines. In 1941, he enlisted in the

United States Navy. He became a prisoner of war on May 6, 1942. He rejoined his unit on March 21, 1945. He received an honorable discharge on April 10, 1946.

Petitioner testified that while he was in the Navy, he made no effort to apply for United States citizenship because he thought that the only way he could be naturalized was to be physically present in the United States.

In June of 1946, petitioner accepted employment as a civilian with the United States Army Transport Service. He was physically present in the Philippines until early July, 1946, when he departed for the United States on his employer's vessel. Shortly after his arrival in Seattle, Washington, petitioner inquired with the Seattle Immigration Service office regarding the requirements for naturalization.

Petitioner testified that the Immigration Service instructed him not to leave the United States without first contacting the Service and that further processing of his case required verification of his military service.

About 5:00 p. m. on August 16, 1946, petitioner was notified by his employer that he was to depart the Philippines on the next day, a Saturday. Petitioner testified that he attempted to call the Immigration Service but received no answer. He testified that he did not write a letter subsequent to his departure because he was waiting for the Immigration Service to inform him on the status of his application.

Petitioner is seeking naturalization under Sections 701–705 of the Nationality Act of 1940, as amended. 56 Stat. 182–183. Petitioner is ineligible for naturalization under the current statute, 8 U.S.C. § 1440, which requires that eligible servicemen either have enlisted in particular geographical areas not including the Philippines or have been admitted to the United States as permanent residents. The sole issue presented to this court is whether petitioner can be naturalized under the 1940 Act which expired on December 31, 1946.

The Government consents to the application of the 1940 Act and naturalization of some Filipino World War II veterans (Category I veterans) and opposes the application of the 1940 Act and naturalization of others (Category II veterans). The landmark case is *Naturalization of 68 Filipino War Veterans*, 406 F.Supp. 931 (N.D.Cal.1975) (hereinafter cited as *68 Veterans*).

The court finds that petitioner is not a Category I veteran. The overseas naturalization under Section 702 applied only during active service in the armed forces. According to his own testimony, petitioner took no action while in the armed forces. The Category I veterans in *68 Veterans* all took action while in the service.

Petitioner is a Category II veteran. He did not apply for naturalization while on active duty in the armed forces.

■ Petitioner has standing to bring this action. This case does not turn on whether petitioner can prove that he would have been naturalized but for the Attorney General's decision to withdraw the naturalization examiner from the Philippines. Petitioner has demonstrated "an injury to himself that is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976), and has shown a "fairly traceable causal connection between the claimed injury and the challenged conduct." *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978).

■ The precise issue in this case involves the due process constraints on the executive authority. Although the naturalization statute at issue here was enacted and implemented during World War II, it was not a military measure and did not directly concern the war effort. While the court is not equipped to judge the merits of naturalization laws or the wisdom with which they are implemented, it can determine whether the government's actions were arbitrary, unauthorized and unconstitutional. Thus, the court finds that peti-

tioner's claim is not foreclosed by the political question doctrine under any of the standards described in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1961).

■ The court finds that petitioner is not barred by laches from instituting this action. Laches demands more than delay; it requires lack of diligence. *City of Davis v. Coleman*, 521 F.2d 661 (9th Cir. 1975). The Government has failed to establish that petitioner has slept upon his rights and has failed to establish that the Government will be unfairly prejudiced by petitioner's delay in instituting this action. Moreover, petitioner's due process claim, which is distinct from a claim of estoppel against the government, is not barred by the Supreme Court's decision in *INS v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973) (Filipino war veteran could not claim estoppel against the government for its failing to advise him of right to naturalization under the 1940 Act).

■ The court finds that Section 310(e) of the Immigration and Nationality Act of 1952, 75 Stat. 656, 8 U.S.C. § 1421(e), cannot be applied to negate the due process rights of petitioner. The Ninth Circuit's ruling in *United States v. Pasion*, 524 F.2d 249 (9th Cir. 1975), is inapplicable to the case at bar since the court in *Pasion* did not consider whether Section 310(e) should be applied to deny a constitutional remedy.

The court has found that petitioner's claim is neither a nonjusticiable political question nor barred by *Hibi*, statutory, or equitable limitations. Thus, the court is faced squarely with reviewing the merits of petitioner's constitutional arguments.

■ Petitioner was a United States national protected by the United States Constitution until the Philippines became an independent country on July 4, 1946. *See Johnson v. Eisentrager*, 339 U.S. 763, 771, 780, 70 S.Ct. 936, 940, 944, 94 L.Ed. 1255 (1950). Petitioner can assert a claim based on the Due Process Clause of the Fifth Amendment and the Equal Protection rights derived from that provision. *See Hampton v. Mow Sun Wong*, 426 U.S. 88,

100, 96 S.Ct. 1895, 1903, 48 L.Ed.2d 495 (1976); *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). Thus, petitioner was entitled to claim the protections of the Due Process Clause at the time the naturalization examiner was withdrawn from the Philippines. However, the court, following the recent Second Circuit opinion in *Olegario v. United States*, 629 F.2d 204 (2d Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981), finds no due process violation arising from the withdrawal of the naturalization examiner.

■ The withdrawal of the naturalization examiner from the Philippines did not constitute an unconstitutional exercise of executive authority. While Congress is vested with authority over naturalization, the executive's wide discretion in foreign affairs may affect national policy toward noncitizens. *See Hampton v. Mow Sun Wong*, 426 U.S. 88, at 105, 114, 115, 96 S.Ct. at 1906, 1910 (1976). The court finds that the Attorney General's decision to withdraw the naturalization examiner from the Philippines was a response to the concern expressed by the Philippine government that too many Filipino males would be lost to naturalization by the United States. The authority granted to the Immigration and Naturalization Commissioner and the Attorney General to implement the 1940 Act without specific guidelines or restrictions, was sufficient to permit the executive to exercise some discretion when confronted with the request by the Philippine government to withdraw the authority of the naturalization examiner. The court concludes that the decision to withdraw the naturalization examiner from the Philippines was not beyond the limits of the Attorney General's discretion or Congress' mandate for the executive branch to implement the 1940 Act.

■ Having concluded that the withdrawal of the naturalization examiner from the Philippines was neither unauthorized nor inconsistent with Congress' intent, the question before this court is whether the national interests at stake justified this decision. "When the federal government

seeks to sustain a rule discriminatory against noncitizens in a manner which would violate equal protection if adopted by a state, it must demonstrate that the rule substantially furthers important federal interests in the regulation of immigration and naturalization." *Mow Sun Wong v. Hampton*, 435 F.Supp. 37, 44 (N.D.Cal.1977). The equal protection analysis involves significantly different considerations when it concerns the relationship between aliens and the states rather than the relationship between aliens and the federal government. *Mathews v. Diaz*, 426 U.S. 67, 84–85, 96 S.Ct. 1883, 1893–94, 48 L.Ed.2d 478 (1976). The analysis in *68 Veterans* relied primarily on Fourteenth Amendment cases which applied the compelling state interest test to alienage classifications by the states. However, Supreme Court cases decided after *68 Veterans* demonstrate that this heightened scrutiny is inappropriate for federal policies and regulations, particularly in the areas of immigration and naturalization.

The court concludes that the decision made by the Immigration and Naturalization Commissioner and the Attorney General to withdraw the naturalization examiner from the Philippines was justified in light of the express federal interest in responding to the concerns voiced by the Philippine government. While this action did have an adverse impact on Filipino servicemen, it was justified by a sufficiently important interest in foreign affairs to satisfy the appropriate constitutional standard.

Finally, the court holds that the Government's failure to appeal the decision in *68 Veterans* does not collaterally estop the Government from relitigating the constitutional issues raised by Category II Veterans. Petitioner's reliance on *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), which approved the use of "offensive" collateral estoppel under certain circumstances, is misplaced. The decision not to appeal the *68 Veterans* case may have resulted from a variety of factors—scarcity of resources, potential impact, public interest—which were totally unrelated to the legal issues of the case.

The court has no doubt that petitioner would be a fine citizen. However, the court concludes that the Second Circuit in *Olegario v. United States, supra*, has correctly analyzed the law. The court concludes that the correct analysis of the law requires the denial of the petition for naturalization.

Accordingly, it is ordered that the petition for naturalization be denied.

IT IS SO ORDERED.