**UNITED STATES of America, Plaintiff,**

v.

**Marshall C. SASSER, Defendant.**

**Civ. A. No. 2:88–2198–8.**

United States District Court,
D. South Carolina,
Charleston Division.

June 6, 1990.

R. Emery Clark, Asst. U.S. Atty., Columbia, S.C., for plaintiff.

D.W. Green, Jr., Conway, S.C., T. Allen Legare, Jr., Charleston, S.C., for defendant.

## ORDER

BLATT, Senior District Judge.

This matter is before the court on the cross-motions of the plaintiff and the defendant for summary judgment. Plaintiff, the United States of America, has brought

---

this action to require removal of barriers on two tidal watercourses in the Waccamaw and Pee Dee River areas of Georgetown County, South Carolina. Each watercourse is blocked by barriers owned and maintained by the defendant, Marshall C. Sasser. These barriers exclude the general public from navigating these watercourses. The plaintiff, under the Rivers and Harbors Act of 1899, is seeking injunctive relief forcing the defendant to remove the barriers. This court held a hearing in this case on April 25, 1990, and the motions are ripe for disposition.

A review of the undisputed facts follows. The defendant owns and maintains a wooden fence-like barrier across the mouth of a tidal waterway located in Georgetown County. This barrier is in an area of former rice fields on an unnamed tributary of the Waccamaw River, and is identified by the parties as barrier number 56. It is undisputed that this stream is subject to the ebb and flow of the tide, that it is an irregularly shaped stream, and that it is a natural tributary of the Waccamaw River. This waterway is capable of supporting navigation by a canoe or a regular size jon boat—(12 to 14 feet). For purposes of this decision, it appears that this stream was altered prior to 1771 by the developers of the rice plantation which once occupied the surrounding land. The watercourse was damned off by the use of a bulkhead, and a ditch was cut around the existing stream to allow placement of a trunk-gate device. Additionally, the defendant owns and maintains a second fence-like barrier, identified by the parties as barrier number 42, which blocks the entrance to Caraway Creek. This creek is a tributary of the Pee Dee River, and is a natural stream subject to the ebb and flow of the tide. Caraway Creek is also capable of supporting navigation by a canoe or a regular size jon boat. The land surrounding this creek was once a part of an 18th and 19th century rice plantation.

Presently, the land and marsh surrounding barrier 56 and its unnamed water-course is owned and maintained by the defendant, who manages it as a private preserve for a duck hunting club to which he sells memberships. Likewise, the land and marsh on the north side of Caraway Creek and barrier 42 is owned by the defendant, who manages it for the same purpose.[1] The acknowledged purpose of each barrier is to deny the public access to these waterways, and the defendant has posted signs on both barriers to this effect.

Until the 18th century, the areas in question were part of the pristine tidal swamps of the Waccamaw and Pee Dee River regions. With European settlement, these areas were cleared and converted into rice fields. To support this type of agriculture, an intricate series of canals and ditches were constructed to irrigate and drain the fields by using the ebb and flow of the tide. Dikes with trunk-gates were constructed to hold and release water in the fields, and, when possible, use was made of existing natural creeks rather than constructing new canals. These natural creeks are distinguished from the canals by their winding and irregular paths. History reveals that the rice plantations did not last. The loss of slave labor rendered their operation unprofitable, and, before the end of the 19th century, the rice culture died. In recent years the areas in question have been owned and maintained for the purpose of attracting ducks. The barriers at issue were erected to exclude members of the general public from these hunting grounds.

The United States Army Corps of Engineers (the Corps) is vested by Congress with the responsibility of enforcing the Rivers and Harbors Act of 1899, 33 U.S.C. § 401 *et seq.* This Act, in part, prohibits the obstruction of the navigable waters of the United States absent a permit issued by the Corps. No such permit has been issued by the Corps for barriers 42 and 56. The defendant has refused to remove the barriers when requested to do so by the Corps, and this action was filed to mandate their removal.

---

1. The estate of A.M. Quattlebaum owns the land to the south of Caraway Creek. Originally, barrier 42 was owned by that estate, but was transferred by bill of sale to the defendant after this suit was brought.

The motions before the court raise three issues. These are:

1. Is the ebb and flow of the tide a sufficient basis for classifying a watercourse as a navigable water of the United States for the purpose of asserting jurisdiction, and thus, prohibiting unauthorized obstructions to navigation under the Rivers and Harbors Act of 1899?

2. Are the barriers permitted or "grandfathered" and, therefore, authorized under Section 10 of the Rivers and Harbors Act of 1899?

3. Does requiring the removal of the barriers constitute a taking of property from the defendant without just compensation, in violation of the Fifth Amendment of the United States Constitution?

The first issue is whether these streams are part of the navigable waters of the United States. There is no dispute that both watercourses are subject to the ebb and flow of the tide. The plaintiff argues that this is sufficient to classify the streams as navigable waters, while the defendant believes that the streams must be navigable in fact.

Under the principles of Admiralty law passed to this country from England before the revolution, navigable streams were defined as those subject to the ebb and flow of the tide. The early American cases adopted this rule. However, unlike England, the United States has great inland waters that are capable of being used in commerce. As the nation grew westward, it became apparent that the test for navigability derived from the English courts was antiquated. Therefore, in *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1870), and in other cases, a new test was formulated. This test, the navigability in fact test, holds that a stream is navigable in fact when it is used, or is susceptible of being used, as a highway for commerce.

The problem in the case law is that the Supreme Court, in *The Daniel Ball*, did not state whether the navigable in fact test is now the exclusive method to determine navigability. While there is language in *The Daniel Ball* opinion to the effect that the ebb and flow test was no longer applicable in this country, examination of more recent precedent suggests that either test of navigability may be employed to determine if a watercourse is navigable.

This court has conducted a thorough search of the law about navigable waters. It appears that every court that has reached the question has ruled that the ebb and flow test and the navigability in fact test co-exist. The ebb and flow test is rejected only when its use would limit Admiralty jurisdiction. 1 S. Friedell, *Benedict on Admiralty* § 141 n. 8 (1989). For instance, in *Hassinger v. Tideland Elec. Membership Corp.*, 781 F.2d 1022 (4th Cir. 1986), this circuit held that navigable waters include all those areas within the ebb and flow of the tide. Although that is a maritime tort case, it seems clear that, in this circuit, navigable waters have always meant ebb and flow, in addition to, and existing alongside with, the navigability in fact test.

The defendant believes that the navigability in fact test is the only test that is consistent with the purpose of the Rivers and Harbors Act. This court does not agree. Although there is no legislative history about the Act, the ebb and flow test is compatible with the purpose of the Act at issue here, which is to keep open the navigable waters of the United States for all legitimate public purposes. *E.g., Shively v. Bowlby*, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331 (1894)—(title to lands under tidal waters is held by the sovereign for the benefit of the whole people for the purposes of commerce, navigation, and fishery). The Rivers and Harbors Act must be construed, in this court's opinion, to give the Corps jurisdiction under the widest possible test of navigable waters, because to find otherwise would allow public ownership of waters with no public right of access. That the only probable reason for access is for recreational use is of no import, as the public has a right of access to navigable waters. *E.g., State ex rel. Medlock v. S.C. Coastal Council*, 289 S.C. 445, 346 S.E.2d 716 (1986)—(waterway used by general public for boating, hunting, and fishing is navigable). As the defendant

cannot own a navigable stream, it is illogical to allow him to block the public's access.[2]

■ Furthermore, any discussion of the purpose of the Act is academic. Under *United States v. Stoeco Homes*, 498 F.2d 597 (3rd Cir.1974), the ebb and flow test was employed to define the Corps' jurisdiction under the Rivers and Harbors Act. This case was cited with approval by the Fourth Circuit in *Hassinger*, 781 F.2d at 1026. Accordingly, this court is bound by precedent and finds that the ebb and flow of the tide is sufficient to confer jurisdiction on the Corps.

It further appears that the Supreme Court may have ruled on this issue. In *Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979), the Court considered issues relating to the Rivers and Harbors Act. While the Court did not explicitly state that it was applying the ebb and flow test, it appears, under the facts of that case, that this test was applied. At issue was whether the Corps, by opening to the public a former tidal pool that had been dredged and converted into a marina, had unconstitutionally taken the property from the owners. It was, apparently, the tidal character of the pool that allowed the Corps' jurisdiction.

Perhaps of even more importance is that the Court in *Kaiser Aetna* cited with approval the Corps' regulation defining navigable waters. *Kaiser Aetna*, 444 U.S. at 171, 100 S.Ct. at 388. This regulation, set forth at 33 C.F.R. § 329.4, is as follows:

> Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce. A determination of navigability, once made, applies laterally over the entire surface of the waterbody, and is not extinguished by later actions or events which impede or destroy navigable capacity.

As the regulations of an administrative agency are to be given weight when litigating issues concerning those regulations, *e.g., Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), and the Supreme Court has approved this specific regulation, this court finds that it must apply the ebb and flow test in the present case.

At the hearing on these motions the defendant requested permission for an immediate appeal under 28 U.S.C. § 1292(b) on this court's determination that the waters herein involved constitute navigable waters of the United States. The plaintiff agreed with this request. While this court has thoroughly analyzed the applicable legal authorities to determine that these streams are part of the navigable waters of the United States, it has concluded that there are ample grounds for a serious difference of opinion on this legal issue. Additionally, the guidance of the Fourth Circuit Court of Appeals would ultimately advance the termination of this litigation, as this court has yet to grapple with the difficult "grandfathering" and "takings" issues presented by these motions. Accordingly, it is

ORDERED, that the defendant be, and he hereby is, directed to remove the obstructions herein designated as barrier numbers 42 and 56, as these barriers obstruct navigable waters of the United States.

As this court is of the opinion that this Order involves a controlling question of law as to which there is a substantial ground for a difference of opinion, and that an immediate appeal from this Order will materially advance the ultimate termination of this litigation; it is

ORDERED, that the defendant is granted leave to file an immediate appeal of this Order to the Fourth Circuit Court of Appeals under 28 U.S.C. § 1292(b); and

---

2. It would also seem that the definition of navigability for purposes of the Act would be the definition in general usage at the time the Act passed in 1899. The only definition available to Congress at that time was the Admiralty definition. As Congress did not redefine navigable waters for purposes of the Act, Congress must have concluded that the then current definitions of navigable waters—(including ebb and flow)— were suitable.

IT IS FURTHER ORDERED, that this case is stayed pending timely action on any petition by the defendant to the Fourth Circuit Court of Appeals for permission to take an immediate appeal from this Order, and thereafter, until further Order of the Fourth Circuit Court of Appeals, should it allow an immediate appeal herein.

IT IS SO ORDERED.