UNITED STATES of America, Plaintiff,

v.

Marshall C. SASSER, M.D., Defendant.

Civ. A. No. 2:88–2198–8.

United States District Court,
D. South Carolina,
Charleston Division.

May 31, 1991.

R. Emery Clark, Asst. U.S. Atty., Columbia, S.C., for plaintiff.

D.W. Green, Jr., Conway, S.C. and T. Allen Legare, Jr., Charleston, S.C., for defendant.

## ORDER

BLATT, Senior District Judge.

This matter is before the court on the cross-motions of plaintiff and defendant for summary judgment. Plaintiff, the United States, has moved this court to require defendant to remove certain barriers, designated numbers 42 and 56, which obstruct navigable waters of the United States.

This court entered an order dated June 6, 1990,[1] in which it held that the streams involved herein were "navigable waters of the United States" because they were admittedly subject to the ebb and flow of the tide. By that same order this court granted leave for the parties to appeal that determination, and the case was stayed pending appeal. The Fourth Circuit Court of Appeals denied the request for interlocutory appeal and the matter came again before this court to resolve the remainder

1. *United States v. Sasser,* 738 F.Supp. 177 (D.S.C.1990).

of the issues raised by the parties' motions for summary judgment.

In a hearing held October 3, 1990, defendant asserted that 33 C.F.R. § 330.3(b) served as a "grandfather" clause to permit these barriers to remain in place. The regulation provides nationwide permits for structures completed before December 18, 1968, and for structures in waterbodies over which the District Engineer had not asserted jurisdiction at the time the activity occurred, provided, in both instances, there is no interference with navigation. There is ample evidence that Barriers 42 and 56 were in place prior to December 18, 1968, and that the Corps did not assert jurisdiction over these two creeks at the time the barriers were originally erected. However, the very purpose of the barriers is to obstruct navigation into these creeks. Accordingly, for the reasons articulated at the October 3, 1990, hearing, this court found that these two barriers interfered with navigation and that 33 C.F.R. § 330.0(b) did not operate to permit these two barriers. Furthermore, at the same hearing, this court determined that any claim for compensation sought by defendant for an alleged "taking" of his property must be made under the Tucker Act in the Court of Claims.

■ In another hearing held March 25, 1991, defendant again argued that the type of navigation which was being protected by the Corps of Engineers at the time Barriers 42 and 56 were erected was navigation solely for the purpose of commerce. Defendant urged that the proviso of § 330.-3(b), which requires that the "grandfathered" barriers cause no obstruction to navigation, referred only to the type of navigation being protected at the time the barriers were erected, or to the type of navigation being protected at the time the "grandfather" regulation was adopted.

Defendant referred to the Corps' regulatory definition of "navigable waters" in place prior to 1972, which included a passage from *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1871).

For the reasons orally expressed at the March 25, 1991, hearing, this court found that the term "navigation" as used in 33 C.F.R. § 330.0(b) is not limited as suggested by the defendant.[2] Although the Corps may not have enforced regulation of some tidal waters which were not immediately navigable for the purpose of commerce prior to 1972, the Corps has had jurisdiction over those waters since at least 1899 when the Rivers and Harbors Appropriation Act of 1899 was passed and one of the definitions of navigability in general usage then was the ebb and flow test derived from admiralty law. *See, United States v. Stoeco Homes, Inc.*, 498 F.2d 597, 608–10 (3rd Cir.1974); *accord, Hassinger v. Tideland Electric Membership Corp.*, 781 F.2d 1022 (4th Cir.1986) (citing *Stoeco* with approval). Notwithstanding the Corps' enforcement policy prior to the 1972 regulation, the Corps' interpretation of that which constitutes "navigable waters of the United States" is not binding on this Court. As best stated in 33 C.F.R. § 329.3, "[p]recise definitions of 'navigable waters of the United States' or 'navigability' are ultimately dependent on judicial interpretation and cannot be made conclusively by administrative agencies."[3] It being this court's opinion that the creeks involved herein are navigable waters of the United States subject to the jurisdiction of the Corps of Engineers, this court remains convinced that the grandfather clause in 33 C.F.R. § 330.-3(b) does not exempt these barriers to navigation into the subject creeks from regulation by the Corps, regardless of the definition of navigation being used by the Corps for enforcement purposes prior to 1972.

2. *See, e.g., Fisher v. Danos,* 595 F.Supp. 461, 466–67 (E.D.La.1984), *aff'd without op.* 774 F.2d 1158 (5th Cir.1985). In *Fisher,* identical regulatory language contained in 33 C.F.R. § 320.4(g) (1981) was discussed with respect to two jetties which obstructed navigable waters of the United States but which had been in place prior to December 18, 1968. The District Court found that the jetties were an obstruction to navigation; therefore, the grandfather clause did not apply.

3. Similar language was included in 33 C.F.R. § 209.260(a) in 1946, and the same language was retained in the 1972 amendments embodied in 33 C.F.R. § 209.260(b).

Defendant also cited the Ninth Circuit Court of Appeals opinion in *United States v. Kaiser Aetna*, 584 F.2d 378 (9th Cir. 1978), to support its argument that the ebb and flow test alone is insufficient to establish a waterway as a navigable water of the United States, because in *Kaiser Aetna* the test of navigability did not rest on ebb and flow of the tide alone, but instead on the pond's potential for navigation in commerce. Defendant further directed the court's attention to footnote two of the Circuit Court opinion in *Kaiser Aetna* which states that "the [ebb and flow] test determines the outer limits of an admittedly navigable water body and does not serve to render navigable a separate and distinct water body not otherwise navigable." [4] In this regard, the court finds the defendant's reliance on *Kaiser Aetna* to be misplaced.

In *Kaiser Aetna*, though Kuapa pond had always been tidally influenced, a peculiarity of Hawaiian property law distinguished the pond as a private waterbody which was not subject to the federal navigational servitude prior to the improvements which connected the pond to the bay by a channel. Once Kuapa pond was connected to an open waterway it fell within the jurisdiction of the Corps of Engineers. In the case *sub judice*, there is no peculiarity of law which would remove the creeks in their natural state from the Corps' jurisdiction. Unlike the Hawaiian fish pond, which was inaccessible from the open bay prior to the dredging activities, there are no natural obstructions which prevent access from the Waccamaw and PeeDee Rivers into these rice field creeks. The only obstructions to navigation into these two creeks are the barriers maintained by defendant.

■ Finally, defendant argued at the March 25, 1991, hearing that the Government is estopped from asserting the navigational servitude over these two water-

bodies because it has acquiesced, by its inaction, to the location of the barriers in theses creeks for many, many years. Defendant contended that the Corps' permit policy in effect years ago when the barriers were constructed did not require permits for obstruction of these type waterways because the definition of navigability followed then by the Corps included only waterways which could support navigation for commerce. Arguing that the current regulation governing the waterways is inapplicable, defendant asserted that the Government is now estopped from using the new regulation to support its claim of jurisdiction over these two creeks. Defendant cites *U.S. v. Stoeco Homes, Inc.,*[5] to support its argument.

The holding of *Stoeco* is, by the Third Circuit's own words, to be narrowly construed. *Id.,* at 611. Prior to the policy change of the Corps discussed in *Stoeco,* the tidal marshlands, which were the subject of that suit, had been converted to fast land in 1927 by a predecessor in title to Stoeco. The land had remained fast land for more twenty years before Stoeco purchased the land in 1951. In 1951, the land was largely situated above the mean high tide and was no longer subject to the ebb and flow of the tide. Stoeco had no notice at purchase that the Government had a claim of navigational servitude over this fast land.

After the land acquisition, Stoeco applied for a permit to dredge and create two separate waterways which were to have access to the adjacent Intercoastal Waterway. The Corps granted the permit in November, 1951, and work commenced. In addition to the two waterways accessing the harbor, Stoeco's development plans included the creation of an internal lagoon system, above the established harbor line, which was to have no direct access to the coastal waters. In 1971,[6] the Corps took

4. *United States v. Kaiser Aetna,* 584 F.2d 378, at note 2 (9th Cir.1978); *rev'd on other gr'ds,* 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d. 332 (1979).

5. 498 F.2d 597 (3rd Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d. 397 (1975).

6. Construction was delayed as a result of litigation unrelated to the tidal character of the land. When construction resumed in 1971, Stoeco modified its plan with respect to the internal lagoons but not with respect to the waterways which were connected to the intercoastal waters addressed by the 1951 permit.

the position that Stoeco needed a permit to create the internal lagoon system because, although the land was currently above the mean high tide, the land had once been estuarine tidal marsh, and, therefore, was within the navigable waters of the United States.

In 1972, the Corps announced its position that estuarine tidal marshland, which was at anytime subject to the ebb and flow of the tide, is perpetually subject to the navigational servitude of the United States. *Id.*, at 605, citing 37 Fed.Reg. 18290, 18911, Sept. 1972. In September 1972, the Corps sought an injunction to prevent further construction in the Stoeco development until resolution of the dispute by the District Court. The injunction was granted and the District Court resolved the suit in favor of the government. The case was then appealed to the Third Circuit Court of Appeals.

The Third Circuit found that § 10 of the Rivers and Harbors Act gives the Corps authority to consent by permit to encroachments upon the navigational servitude of the United States. Further, the court found that if an administrative agency gives consent by permit without reservation, such consent must be considered to be a surrender of the right. The appellate court assumed from the facts before it that the administrative practice in 1927 when the land was filled did not require agency consent for encroachments above the harbor line. The court concluded that in 1951, when Stoeco purchased land which had been fast land for more than twenty years, the navigational servitude had long since been surrendered. The Court held that a broad injunction against any construction whatsoever on the land in question was not sustainable under the facts of that case, but that construction in areas subject to the ebb and flow of the tide was subject to the new permitting scheme promulgated in

accordance with § 10 of the Rivers and Harbors Act; however, the court clearly stated that its holding was limited to tidal marshland which had been converted to fast lands.

Such is not the situation before this court. The subject of dispute in the instant case is the obstruction of two navigable waterways, not construction in an area of fast land which once had been estuarine tidal marshland. Unlike the facts of *Stoeco*, the estuarine nature of defendant's land was not shielded from the purchaser's eyes by the controversial actions of a prior owner, and the Corps' policy in question did not change after defendant's acquisition. Moreover, in *Stoeco* the applicable grandfathering regulation specifically referred to "work ... completed or commenced in conformance with *existing harbor line authority*."[7] Such language suggests that the agency recognized a change in harbor line authority and made an exception for structures in conformity with prior harbor line authority.[8] The applicable regulation in the instant case makes no exception for, or reference to, obstructions in place under the Corps' prior interpretations or enforcement policies regarding navigable waterways. Furthermore, the "grandfathering" regulation applicable herein specifically excludes structures which obstruct navigable waterways. For these reasons, this court does not find the *Stoeco* case to be compelling on the facts of the case *sub judice.*

Defendant alleges that barriers of some form or fashion have spanned the two creeks in question since at least 1940–1945. In 1967, a predecessor in title erected Barrier 42 in its current position across Carraway Creek. In 1980, defendant acquired the land surrounding Carraway Creek where Barrier 42 is located. Defendant also purchased in 1980 the land surrounding the unnamed waterway spanned by Barrier 56.[9] In 1987, the Corps notified

---

7. 33 C.F.R. § 209.150(b)(2) (1972).

8. *Id.* at 604, (emphasis added). In *Stoeco,* the Third Circuit Court of Appeals did not rest its holding that the government had surrendered the navigational servitude over the subject land on 33 C.F.R. § 209.150(b)(2) because the Dis-

trict Court had not made reference to that regulation in its order.

9. There is a convoluted title history to the land surrounding the waterway spanned by Barrier 56 which supports defendant's claim that, though he only purchased this property in 1980,

defendant that the two barriers obstructed navigable waterways of the United States and required removal of the barriers.

It is defendant's testimony that he has hunted on these lands since his childhood and that these barriers have always been in place. Defendant claims that he purchased these lands intenting to use them for hunting, and that he would not have done so had he known the Corps would assert jurisdiction over the waterways. Defendant admits that he did not seek the approval of the Corps regarding the erection or maintenance of these barriers before the expenditure of funds to improve the land and organize his hunt club. Defendant now asks this court to find that the government has surrendered its navigational servitude and that the government should be estopped from asserting jurisdiction over these tidal creeks.

▇▇▇ To invoke the doctrine of equitable estoppel one must prove that he reasonably relied to his detriment on the material misrepresentations of his adversary, and that his adversary knowingly misrepresented facts with the expectation that those misrepresentations would be relied upon. *Heckler v. Community Health Services, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). Estoppel against the Government is an extreme measure.[10] A party seeking to estop the Government must first demonstrate the traditional elements of estoppel and then must make a showing of some affirmative misconduct on the part of the Government to warrant estoppel against the sovereign.[11]

Generally, a person dealing with the Government is charged with the knowledge

of, and is bound by, statutes and lawfully promulgated regulations. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). When defendant purchased these two parcels of property bordering these two creeks, the regulatory definition of "navigable waters of the United States," which includes waterways subject to the ebb and flow of the tide, was already lawfully in place. The regulation prohibiting the obstruction of navigable waters of the United States was also in place. This court finds insufficient facts to support a case for simple equitable estoppel because defendant has failed to prove that his reliance on the historic placement of the barriers, without inquiry, was reasonable under the circumstances. Further, this court finds that defendant has offered no evidence of affirmative misconduct on the part of the Government. Accordingly, this court finds that the Government is not estopped from asserting jurisdiction over these two creeks.

For the reasons stated herein, and in this court's order dated June 6, 1990, and for those reasons orally expressed at the hearings held on October 3, 1990, and March 25, 1991, it is

ORDERED that plaintiff's motion for summary judgment is hereby granted, and defendant's motion for summary judgment is hereby denied.

IT IS FURTHER ORDERED that defendant shall remove the obstructions designated as Barriers 42 and 56, as these barriers obstruct navigable waters of the United States, and such removal shall take place no later than sixty (60) days from the date hereof; however, if this order is appealed, such appeal shall act as a stay of this order

---

he has had ties to the subject property for many years.

The property had been owned by a corporation which was dissolved and the property was then conveyed to ten stockholders, each owning an undivided interest in the land. An interest was purchased by defendant's father who bequeathed that interest to defendant's mother. She conveyed her interest to defendant in 1958. Later, the property was partitioned in kind by the court, but defendant did not receive in that partition proceeding the parcel which bordered the waterway spanned by Barrier 56. Defen-

dant purchased the share adjacent to Barrier 56 in 1980.

**10.** For a thorough discussion of caselaw on government estoppel *see, Tosco Corp. v. Hodel*, 611 F.Supp. 1130, 1201–1207 (D.C.Colo.1985); 27 ALR Fed 702.

**11.** *See e.g., Immigration and Naturalization Service v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973); *Utah Power and Light Co. v. United States*, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917).

until a final decision is reached in this case by the Fourth Circuit Court of Appeals or the United States Supreme Court.

IT IS SO ORDERED.